**INTERNATIONAL PAINT COMPANY, INC. et al., Plaintiffs-Appellees,**

v.

**M/V MISSION VIKING, In Rem, and A. Martin Industries, a Louisiana Corp., Defendants.**

**MANUFACTURERS HANOVER LEASING CORP., Intervenor-Appellant, Cross-Appellee,**

v.

**ALEXANDER INDUSTRIES, INC. et al., Intervenors-Appellees,**

**Foods & Services, Inc., Intervenor-Appellee, Cross-Appellant.**

No. 79–1965.

United States Court of Appeals, Fifth Circuit. Unit B

Feb. 19, 1981.

Abram L. Philips, Jr., Patricia K. Olney, Mobile, Ala., Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for Manufacturers Hanover Leasing Corp.

Jack M. Alltmont, New Orleans, La., for Foods & Services, Inc.

G. Hamp Uzzelle, III, Mobile, Ala., for Alexander, Mobile & Drew Chem.

J. George Whitfield, Jr., Mobile, Ala., for Int'l & Marine Supplies.

Donald J. Stewart, Mobile, Ala., for Gulf Welding.

William S. Shulman, Mobile, Ala., for ITT MacKay Marine.

Frank G. Taylor, Mobile, Ala., for Comm. Industr.

G. Sage Lyons, John Patrick Courtney, III, Mobile, Ala., for Ala. State Docks Dept.

Robert J. Oberfell, New Orleans, La., for Hydril Co. Sub Sea.

Before GODBOLD, TJOFLAT and VANCE, Circuit Judges.

GODBOLD, Circuit Judge:

This case concerns the ranking of liens on the libeled vessel Mission Viking. Manufacturers Hanover Leasing Corp. (MHLC) held a first preferred ship mortgage on the vessel. It bought the ship at foreclosure sale by bidding on the credit of its mortgage, agreeing that it would pay any claims adjudicated superior in priority. The district court held that the mortgage instrument waived MHLC's priority to the extent of $100,000 in favor of liens arising incident to the ship's current operations.[1] The court also decided that Foods and Services, Inc. (F&S), a catering firm hired by the ship, held a superior claim for crew's wages by subrogation to the claims of its employees. The district court denied F&S's subsequent motion for prejudgment interest.[2] We reverse the ruling on waiver, affirm the ruling on crew's wages, and direct an award of prejudgment interest.

*Waiver of priority*

■ The Ship Mortgage Act of 1920 gives preferred ship mortgages priority over most other claims, see 46 U.S.C. § 953. The mortgagee may, of course, waive its priority. 46 U.S.C. §§ 922(a)(4), 974. We conclude that the district court erred in holding that the mortgage instrument waived this statutory priority.

Paragraph 7.4 of MHLC's ship mortgage is headed "No Waiver of Preferred Status." It provides:

No provision of the Mortgage shall be deemed to constitute a waiver by the Mortgagee of the preferred status hereof given by the Ship Mortgage Act, 1920, as

amended, and any provision of the Mortgage which would otherwise constitute such a waiver shall to such extent be of no force or effect.

Section 4 of the mortgage, titled "NEGATIVE COVENANTS," forbids the owner to incur any lien on the vessel except "(d) Liens for crew's wages and salvage, [and] (e) Liens incident to current operations aggregating not in excess of $100,000 [provided that the owner discharge the former within fifteen days after they become due and payable and the latter within fifteen days after they are incurred]." ¶ 4.1. Section 5, titled "EVENTS OF DEFAULT," provides in part that if the shipowner violates § 4 the mortgagee may declare its note due and payable.

The district court found that these provisions created a "latent ambiguity" concerning whether MHLC had waived its preferred status. It resolved this ambiguity against the drafter, MHLC, holding that MHLC had waived its priority to the extent of $100,000 for liens incident to current operations. We reverse because we see no ambiguity.

Paragraph 7.4 clearly intends to preserve the mortgagee's preferred status. Paragraph 4.1 does not conflict with this provision. It forbids the shipowner to incur liens but excepts certain liens that would inevitably arise by operation of law or by necessity. The affidavits that the drafters presented in the district court confirm this reading.[3]

We reject the reasoning of *The Henry W. Breyer*, 17 F.2d 423 (D.Md.1927), on which the district court relied. *The Henry W.*

1. *International Paint Co. v. M/V Mission Viking*, 462 F.Supp. 899 (S.D.Ala.1978).

2. Order of Mar. 31, 1979.

3. Following the district court's order reported at 426 F.Supp. 899, the court held a hearing to establish the priorities and correctness of various claims. The court gave the parties additional time to file affidavits respecting their claims (Order of Jan. 3, 1979). The attorneys for Mission Viking, Inc. and MHLC who had drafted the mortgage submitted affidavits respecting the intended effect of the disputed provisions. The drafters swore that " 4.1(e)'s

limited exception for "liens incident to current operations" sought only to permit the mortgagor to incur those liens without defaulting on the mortgage, and did not waive the mortgagee's priority. In a subsequent opinion deciding the amount of each claim, the court noted that "[t]he intent of the mortgagor and mortgagee appears clearly from the MHLC affidavits." The court reaffirmed its earlier ruling respecting waiver because it still saw a "latent ambiguity," which it construed against the drafter (Order of Mar. 14, 1979).

*Breyer* held that similar language waived the mortgagee's priority because

> The authority to purchase supplies is grouped in the same clause with the authority to impose liens upon the vessel for wages or salvage, which, under the Ship Mortgage Act, give rise to preferred maritime liens. It is therefore a fair conclusion that the parties to the mortgage intended to put all three liens in the same category.

*Id.* at 432. Wages and salvage do have priority by law, but a clause that groups another claim with wages and salvage in a context unrelated to priority need not intend to accord that claim priority as well.

Because ¶ 7.4 declares that priority is not waived, and because we do not read ¶ 4.1 to create an ambiguity on this point, we hold that MHLC did not waive its statutory priority.

#### Crew's wages

■ A preferred ship mortgage has priority over all claims against a vessel except expenses and costs taxed by the court and "preferred maritime liens." 46 U.S.C. § 953(b). "Preferred maritime liens" include liens for "wages of the crew of the vessel." 46 U.S.C. § 953(a). F&S provided the ship with catering and cleaning services and supplies at a per diem rate. F&S's employees lived aboard ship but were employed and paid by F&S, not by the Mission Viking. We agree with the district court that F&S's employees have a lien for "crew's wages" to which F&S has been subrogated.

The importance of the crew member's lien for wages is axiomatic. "[A]s long as a plank of the ship remains, the sailor is entitled, against all other persons, to the proceeds as a security for his wages." *The John G. Stevens,* 170 U.S. 113, 119, 18 S.Ct. 544, 545, 42 L.Ed. 969, 972 (1898). There

are several reasons for this "sacred lien." The ship may be the only valuable security on which the seaman can rely. The seaman is the traditional ward of the admiralty court. Finally, without the seaman's efforts in bringing the ship safely to port, there would be no res against which other creditors could assert claims. *See Fredelos v. Merritt-Chapman & Scott Corp.,* 447 F.2d 435, 439 (5th Cir. 1971) (per curiam), citing 1 M. Norris, The Law of Seamen § 454 at 530 (3d ed. 1970).

Crew members employed by an independent contractor need this special protection just as do crew members employed directly by the ship. They too are insecure and dependent while at sea or in a distant port. Moreover, a seaman's right to sue the shipowner in personam for his wages does not obviate the traditional priority lien in rem. *See* 1B Benedict on Admiralty § 70 at 5–34 (7th ed. 1980) (describing seaman's in personam rights); 1 *id.* § 123 (same); *Leon v. Galceran,* 78 U.S. (11 Wall.) 185, 187–88, 20 L.Ed. 74, 75 (1871); *The C. J. Saxe,* 145 F. 749, 751 (S.D.N.Y.1906). Similarly, F&S's employees may need the protection of a priority lien in rem despite their in personam rights against F&S. We are concerned lest those laboring aboard ship lose their traditional protections when shipowners procure seamen's services through independent contractors. For these reasons, we join the district court in declining to follow *Coastal Dry Dock and Repair Corp. v. The S.S. Baybelle,* 1975 AMC 1736 (S.D.N.Y. 1975). We therefore find that F&S's employees aboard the Mission Viking had a potential lien for crew's wages.[4]

■ With respect to F&S's claim of subrogation to the lien in favor of its employees, one who advances money to pay crew's wages is entitled to a maritime lien of the same rank. *Bank of New Orleans and*

---

**4.** The legislative history of 46 U.S.C. § 953(a) is reviewed in the district court's opinion, 426 F.Supp. at 902. We have carefully considered this legislative history but find it inconclusive. We are not convinced that Congress specifically addressed the problem posed by this case. We therefore hesitate to rest our decision upon that ground. We agree with the district court that there are sensible distinctions between stevedores, who have a preferred statutory lien only when employed directly by the vessel, § 953(a), and crew members, to whom we extend the statutory preference whether employed directly or indirectly.

*Trust Co. v. Oil Screw Tracy Marie*, 455 F.Supp. 78, 80 (W.D.La.), *aff'd*, 580 F.2d 808 (5th Cir. 1978). By paying the salaries of its employees F&S was subrogated to their priority lien against the Mission Viking.

### Prejudgment interest

The district court denied prejudgment interest on the award of F&S's claim for crew's wages. Although an admiralty court has discretion to grant or deny prejudgment interest, "[t]he general rule in admiralty cases is that prejudgment interest should be awarded" absent "peculiar circumstances." *E. g., Dow Chemical Co. v. M/V Gulf Seas*, 593 F.2d 613, 614 (5th Cir. 1979); *Socony Mobil Oil Co. v. Texas Coastal and International, Inc.*, 559 F.2d 1008, 1014 (5th Cir. 1977). The trial court's discretion is thus limited, and this circuit has reversed denials of prejudgment interest in appropriate cases. *E. g., American Zinc Co. v. Foster*, 441 F.2d 1100 (5th Cir.), *cert. denied*, 404 U.S. 855, 92 S.Ct. 99, 30 L.Ed.2d 95 (1971); *Socony Mobil Oil Co.*, 559 F.2d at 1014.

Although this circuit's authority on the subject addresses the propriety of prejudgment interest in tort cases, prejudgment interest is equally appropriate in breach of contract actions. Prejudgment interest is not a penalty, "but is in the nature of compensation for the use of funds." *Socony Mobil Oil Co.*, 559 F.2d at 1014. *See also Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 728 (5th Cir. 1980). Indeed, an admiralty court should deny prejudgment interest even more rarely in contract cases than in tort cases, at least where the contract claim is for a liquid debt. *Van Nievelt, Goudriaan Co.'s Stoomvart Maatschappij v. Cargo & Tankship Management Corp.*, 421 F.2d 1183, 1185 (2d Cir. 1970) (reversing district court's denial of prejudgment interest as an abuse of discretion). *See also Doucette v. Vincent*, 194 F.2d 834, 839 (1st Cir. 1952) (an admiralty decision applying Restatement of Contracts § 337, which would mandate prejudgment interest on liquidated contract claims); 3 Benedict on Admiralty § 419 (A. Knauth 6th ed. 1940) ("In admiralty, interest on claims arising out of breach of contract is a matter of right but the allowance of interest on damages in cases of collision, or other tort or for unliquidated damages, is always in the discretion of the court . . . ."); *The Atlanta*, 82 F.Supp. 218, 239 (S.D.Ga.1948) (greater discretion in admiralty than in other branches of the law to award or deny prejudgment interest, but controlling factor is whether the claim is liquidated). We conclude, therefore, that F&S is entitled to prejudgment interest.

AFFIRMED in part, REVERSED in part.