**SWEDISH TELECOM RADIO, Plaintiff,**

v.

**M/V DISCOVERY I, in rem, Her Radios, in rem and Bajamar Shipping, Ltd., Defendants.**

No. 87–6181–CIV.

United States District Court, S.D. Florida.

July 13, 1988.

Order on Motion for Reconsideration March 22, 1989.

Glen Kolk, Miami, Fla., for plaintiff/counterdefendant.

George Mencio, Jr., Miami, Fla., for defendants/counterplaintiffs.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

PAINE, District Judge.

This cause comes before the court upon Defendants', M/V DISCOVERY I and BA-

JAMAR SHIPPING LTD. (BAJAMAR), Motion for Final Summary Judgment and Supporting Memorandum of Law (DE 69), Plaintiff's, SWEDISH TELECOM RADIO (TELECOM), Cross Motion for Partial Summary Judgment (DE 81) and the Response of Bajamar Shipping, Ltd., and the M/V Discovery I to Plaintiff's Cross Motion for Summary Judgment which Responds to Defendants' Motion for Final Summary Judgment (DE 83). Having reviewed the file and the relevant authorities, the court enters the following order.

### Standard of Review

On a motion for summary judgment, the moving party will prevail if "there is no issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact. *American Viking Contractors, Inc. v. Scribner Equipment Co.* 745 F.2d 1365, 1369 (11th Cir.1984). Once the moving party has sufficiently supported the motion, the party opposing summary judgment must come forward with significant probative evidence demonstrating the existence of a triable issue of fact. *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 114 (5th Cir.1978). The question for the court is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall) 442, 448, 20 L.Ed. 867 (1872) (emphasis in original)). The court may enter summary judgment against the nonmoving party if he or she "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Failure to establish an essential element necessarily renders all other facts immaterial, leading to the conclusion that there is no genuine issue of material fact. *Id.* The moving party is then entitled to judgment as a matter of law because the opposing party has failed to establish an essential element with respect to which he or she has the burden of proof. *Id.* In the present case, the court finds that there is no dispute as to any material fact. Through their cross motions, the parties request the court to make a determination as to the applicable law and, hence, who is entitled to judgment as a matter of law.

### Undisputed Facts

The parties have filed a Joint Pretrial Stipulation (DE 82) in which they have agreed upon virtually every material fact relating to the claims made in TELECOM's Amended Complaint (DE 38). The court incorporates herein by reference the statement of material facts to which the parties have stipulated (DE 82 at 3–12) as a portion of its findings of fact. Defendants' Motion for Summary Judgment contains a few additional facts, especially relating to a June 30, 1986 memorandum of agreement entered between BAJAMAR and Pan Ocean Navigation (Pan Ocean), the former owner of the M/V DISCOVERY I, for the purchase of the Defendant vessel. Neither the fact that this agreement was entered nor the terms of it are disputed by TELECOM. Plaintiff's Cross Motion adds the fact that another memorandum of agreement in addition to the one dated June 30, 1986 was entered by Pan Ocean and BAJAMAR which contained an escrow agreement providing that Pan Ocean would deposit a certain amount of the purchase price of the Defendant vessel into a trust account as bond for any unknown liens or claims made against the vessel for which Pan Ocean might have been liable. BAJAMAR does not dispute the existence of the second memorandum nor the escrow provision. In short, the factual scenario is as follows.

Pan Ocean was the owner of the defendant vessel prior to its sale to BAJAMAR in 1986. The ship, then known as the Venus Venturer, had been damaged by fire and was sent to Union Naval Levante (UNL), a shipyard located in Valencia,

Spain, for refurbishing in anticipation of it being placed up for sale. Detectra Shipping, Ltd. acted as agent for Pan Ocean Navigation, Inc. in preparing the rebuilding plans and in contracting with TELECOM for the rental and maintenance of certain radio equipment. The equipment was installed, pursuant to a rental and maintenance agreement entered between Pan Ocean and TELECOM, while the Defendant ship was still located in Spain at UNL's shipyard. Pan Ocean sold the ship to BAJAMAR in August of 1986. As part of that sale the parties entered a memorandum of agreement which provided that "[t]he radio installation and navigational equipment shall be included in the sale without extra payment, if same is property of the Sellers. The Sellers will deliver to the Buyers a list of any leased equipment." (DE 69, exhibit 2 at 4.) No such list was ever provided nor was there any marking on the rented radio equipment which should have put BAJAMAR on notice that it was subject to a lease. In March of 1987, TELECOM caused a writ of attachment to be served upon the radio equipment and a Warrant of Maritime Arrest on the Defendant ship, M/V DISCOVERY I. TELECOM's Amended Complaint (DE 38), filed November 13, 1988, sues BAJAMAR, *in personam*, for conversion and claims to assert a maritime lien against the M/V DISCOVERY I, *in rem*, for the value of the use of the radios since August 1986 and an absolute right of possession of the radios or damages for their value. Although the parties agree to the essential facts of the case, they do not agree with respect to what law should govern resolution of the dispute.

The rental and maintenance agreement entered between TELECOM and Pan Ocean regarding the radio equipment at issue contains a choice of law provision which provides that

[t]his agreement shall be construed and take effect according to Swedish law ... Should any question or dispute arise as to the true intent and meaning of this Agreement or in respect of any matter or thing arising therefrom or connected therewith every such question or dispute shall be forthwith referred to arbitration in Stockholm by a single arbitrator, to be agreed on by the parties, whose decision shall be final.

Defendants argue that, with respect to the *in rem* claim against the vessel for a maritime lien, that either Swedish or Spanish law should apply. They argue that the choice of law provision in the contract between Pan Ocean and TELECOM should control. Alternatively, they contend that even if the choice of law provision is not controlling, that the court should still follow either Swedish or Spanish law since the connection with those countries is stronger regarding the *in rem* claim than it is with the United States. With respect to Spain, Defendants point out that some of the contract negotiations occurred there, the equipment was installed there and the ship remained at UNL's shipyard for nearly a year awaiting a purchaser. On the other hand, TELECOM argues that the Federal Maritime Lien Act, 46 U.S.C. § 971, *et seq.*, should apply to its claim against the vessel. It bases this argument on the fact that Pan Ocean was an american corporation, the bill of sale for the purchase of the ship between Pan Ocean and BAJAMAR provided for the application of New York law and all of the documents related to the sale were executed in New York.

### Conclusions of Law

#### A. In Rem Claim

TELECOM contends that it is entitled to a maritime lien against the M/V DISCOVERY I, *in rem*, for the value of the use of the radios since August 1986 and an absolute right of possession of the radios or damages for their value. On their face, the laws of Sweden, Spain and the United States conflict regarding Plaintiff's ability to acquire the *in rem* relief it seeks. Therefore, a choice of law analysis is appropriate. *See Chantier Naval Voisin v. M/Y Daybreak*, 677 F.Supp. 1563 (S.D.Fla. 1988). Sweden does not recognize a maritime lien for the type of goods furnished in this case (*See* DE 69, exhibit 3). Spain does not recognize *in rem* remedies at all (DE 69, exhibit 4). However, under § 30, Sub-

sec. P of the Federal Maritime Lien Act, the radio equipment supplied by TELE-COM should be considered "other necessaries" entitling Plaintiff to a lien.

One's common sense should lead to the conclusion that the choice of law analysis should result in the application of Swedish law since the claim for a lien is made by "a Swedish based company, with no presence in the United States, that supplied radio equipment to a Panamanian flag vessel in Valencia, Spain, through the services of a Spanish subcontractor, under an agreement that was signed in Spain and Sweden and called for the application of Swedish law." (DE 69 at 9). Fortunately in this case, common sense and the law are in agreement.

"Maritime law, like our municipal law, has attempted to avoid or resolve conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved." *Lauritzen v. Larsen*, 345 U.S. 571, 582, 73 S.Ct. 921, 928, 97 L.Ed. 1254 (1953). In *Lauritzen,* the Supreme Court provided seven factors used in making its contacts based analysis: 1) the place of the wrongful act; 2) the law of the flag; 3) allegiance or domicile of the injured; 4) allegiance of the defendant shipowner; 5) place of contract; 6) inaccessibility of the foreign forum; and, 7) the law of the forum. *Id.* at 583–92, 73 S.Ct. at 928–33; *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1517 (11th Cir.1985). The list is neither exhaustive nor to be rigidly applied. *Sigalas,* 776 F.2d at 1517. "Rather, a court must view the case as a whole in order to determine which law can most fairly be applied to govern the contractual relationship." *Id.* In a factually similar case, *Gulf Trading & Transp., Co. v. The Vessel Hoegh Shield,* 658 F.2d 363 (5th Cir.1981), the fifth circuit found that while the contacts based framework set forth in *Lauritzen* was useful in the analysis of all maritime choice of law situations, the factors were geared toward a seaman's injury claim. In *Gulf Trading,* as in the present case, the lien to a maritime lien arose by operation of law because the ship's owner was not a party to the

contract under which the goods were supplied. As a result, the court found that the appropriate factors to consider were contained in § 6 of the Restatement (Second) of Conflicts of Law. The relevant factors include (a) the needs of the international system; (b) relevant policies of the forum; (c) relevant policies of other interested states; (d) the protection of justified expectations; (e) the basic policies underlying the relevant field of law; (f) certainty and predictability of result, and (g) ease in the determination of the law to be applied.

■ Consideration of the intent and purpose of the Federal Maritime Lien Act, the law which Plaintiff argues should apply, is necessary to conduct the choice of law analysis. Section 30, Subsec. P of the Act provides as follows:

Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by a suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

On its face, the statute appears to apply to any person or entity regardless of nationality or the location at which the goods were supplied or the services performed. However, the courts interpreting the statute have provided a narrower scope. *See Tramp Oil and Marine, Ltd. v. M/V Mermaid I,* 805 F.2d 42 (1st Cir.1986); *Gulf Trading,* 658 F.2d at 367. "The primary concern of the Federal Maritime Lien Act is the protection of American suppliers of goods and services." *Tramp Oil,* 805 F.2d at 46 (citing the Congressional reports which accompanied the enactment of 1971 amendments to the Act). *See also Gulf Trading,* 658 F.2d at 367. Accordingly, under this interpretation, TELECOM is not entitled to a lien under the Act.

■ This court does not find that such a result disserves the international system. This is especially so in a case such as this where a foreign plaintiff seeks a lien for

the value of goods supplied in a foreign port against a vessel now owned by a foreign company who had no notice of the fact that the equipment was supplied on a rental basis. Granted, a foreign supplier of goods is precluded from acquiring a lien under the federal Act even if it supplies goods or services in an American port. However, when this policy is considered along with the restrictive nature of the laws of Sweden and Spain, it is evident that at least three countries involved in the international maritime system choose not to maintain wide open policies with respect to maritime liens.

Sweden follows the 1967 Maritime Lien and Mortgage Act (DE 69, exhibit 3). Under the Swedish Act, a maritime lien may arise only in five, specifically defined categories of claims: 1) wages and other sums due to the master, officers and other members of the ship's complement in respect of their employment on the ship; 2) port, canal and other waterway charges, and pilotage dues; 3) claims for damages in respect of personal injury occurring in direct connection with the operation of the ship; 4) claims for damages in respect of damage to property occurring in direct connection with operation of the ship; 5) claims for salvage, wreck removal and contribution in general average (DE 69, exhibit 3). None of these apply to the claim made by TELECOM. However, an unfortunate result under Swedish law does not compel this court to override the policy established by United States courts regarding American maritime law.

Finally, the court does not find that considerations of the parties expectations nor the certainty or predictability of result require the court to apply the United States maritime law as suggested by the Plaintiff. Plaintiff was certainly sufficiently sophisticated at the time that it contracted with Pan Ocean to understand that it might not be able to avail itself of the laws of a country with which it had relatively little connection. Even if the mere fact that Pan Ocean was an American corporation which operated the ship from the United States could have brought TELECOM under the protection of the United States maritime

lien provisions, at the time the radio equipment was installed in the ship, it knew that the Pan Ocean intended to sell the ship upon completion of reconstruction. There was no guarantee that the ship would be purchased by an American company nor that it would sail from American ports. Additionally, the choice of law provision in the contract between Pan Ocean and TELECOM is evidence that Plaintiff was willing to submit to the law of that state, regardless of whether it was favorable or not. When the entire scenario is taken into consideration, a decision by this court not to apply the law of which TELECOM now seeks to avail itself is certainly not unpredictable.

Based upon consideration of the factors discussed above, in the context of the case as a whole, the court finds that Swedish law should apply to the *in rem* claim of the Plaintiff, TELECOM. The court also finds that based upon the law of Sweden, TELECOM is not entitled to a maritime lien against the Defendant M/V DISCOVERY I, *in rem*, for the value of the use of the radios since August 1986 nor an absolute right of possession of the radios or damages for their value. Therefore, since there is no dispute as to any material fact, Defendant M/V DISCOVERY I is entitled to judgment as a matter of law.

### B. In Personam Claim

■ The *in personam* claim brought against BAJAMAR is based upon the alleged conversion of the radio equipment. In Florida, the law of conversion is codified in § 772.11 of the Florida Statutes which provides a civil remedy for theft. Section 772.11 refers to § 812.014 for its controlling definition of theft. It is essential to the claim that the defendant knowingly obtain or use the property of another. *See* Fla.Stat. § 812.014. Consequently, for TELECOM to succeed in it *in personam* claim against BAJAMAR, it must have been the owner of the property at the time of the alleged conversion. Plaintiff concedes that "the only issue that would defeat Telecom's claim of ownership is Bajamar's defense of bona fide purchaser for value without knowledge of Telecom's own-

ership rights." (DE 81 at 8). TELECOM, citing §§ 9–5 through 9–7 of Gilmore & Black, The Law of Admiralty (2d Ed.), claims that it is a "well established maritime rule that maritime claims survive the purchase and follow the vessel into the hands of even bona fide purchasers for value." (DE 81 at 8). Unfortunately, TELECOM does not provide any additional authority to show the court just how well established this rule is. Having read the sections cited by TELECOM it appears to the court that Messrs. Gilmore and Black's treatise proposes that a lien or claim against the vessel itself may be asserted against a bona fide purchaser for value, not that such a purchaser may be held liable for an *in personam* claim such as the one now asserted against BAJAMAR. Had TELECOM succeeded in acquiring a maritime lien against Defendant, M/V DISCOVERY I, for the value of the radio equipment, that claim would have survived under Gilmore and Black's analysis even if BAJAMAR was a bona fide purchaser for value.

The undisputed facts show that BAJAMAR had no notice of the fact that the radio equipment was subject to the rental and maintenance agreement between Pan Ocean and TELECOM. Pan Ocean never supplied BAJAMAR, as was agreed, with a list of leased equipment at all, let alone one which included the radios supplied by TELECOM. Moreover, the escrow agreement which TELECOM discusses in its Cross Motion does nothing to destroy BAJAMAR's bona fide purchaser status. It provided for payment of any unknown liens or claims against the vessel by Pan Ocean. It neither imputed any knowledge of actual claims to BAJAMAR nor related to any *in personam* claims against Pan Ocean or BAJAMAR.

The court finds that TELECOM has not defeated BAJAMAR's bona fide purchaser status. Therefore, at the time of the alleged conversion,[1] BAJAMAR was the owner of radios since it had purchased the vessel pursuant to the memorandum of agreement which provided that "[t]he radio installation and navigational equipment shall be included in the sale without extra payment." Therefore it did not knowingly obtain or use the property of another. *See* Fla.Stat. § 812.014. Since TELECOM has failed to make a showing sufficient to establish the existence of an element essential to its case, the court must enter judgment in favor of BAJAMAR with respect to the Plaintiff's claim of conversion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In view of all of the foregoing, it is hereby

ORDERED and ADJUDGED that

(1) Defendants', M/V DISCOVERY I and BAJAMAR SHIPPING LTD., Motion for Final Summary Judgment (DE 69) is GRANTED;

(2) Plaintiff's, SWEDISH TELECOM RADIO, Cross Motion for Partial Summary Judgment (DE 81) is DENIED;

(3) the $124,606.49 deposited in the court's registry shall be returned to the Defendants.

DONE and ORDERED.

## ORDER ON MOTION FOR RECONSIDERATION

This cause comes before the court upon the Motion for Reconsideration (DE 88) of the Plaintiff, SWEDISH TELECOM RADIO [hereinafter TELECOM]. Having reviewed the file and the relevant authorities, the court enters the following order.

On July 13, 1988, the court entered an order in which it granted the Motion for Final Summary Judgment of the Defendants, M/V DISCOVERY I and BAJAMAR SHIPPING LTD. (DE 69) and denied Plaintiff's Cross Motion for Summary Judgment (DE 81). The court went on to try the Counterclaim of the Defendants. The court's Findings of Fact and Conclusions of Law were entered September 12, 1988 and a Final Judgment entered September 13, 1988. Plaintiff now asks the court to reconsider the order of July 13, 1988.

---

1. TELECOM claims that the conversion occurred at the point at which BAJAMAR refused to make lease payments and refused to return the radios to its possession.

Plaintiff, TELECOM, does not offer any authority to support its ability to request the court to reconsider an earlier ruling. TELECOM's Motion is directed toward bringing to the court's attention certain errors of law and fact which it contends that the court made in the July 13, 1988 order. Accordingly, none of the grounds provided for relief from a final judgment or order in Rule 60(b) of the Federal Rules of Civil Procedure apply to the TELECOM's Motion. As Defendants point out in their Response to Plaintiff's Motion for Reconsideration (DE 89), TELECOM's request is best considered a motion to alter or amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See United States v. Gargano*, 826 F.2d 610, 611 (7th Cir.1987); *Stallworth v. Shuler*, 758 F.2d 1409, 1410 (11th Cir.1985).

When proceeding under Rule 59, the moving party may reargue grounds raised earlier at the summary judgment level in an effort to demonstrate errors in the court's ruling. *American Home Assurance Co. v. Glenn Estess & Assoc., Inc.*, 763 F.2d 1237 (11th Cir.1985). However, the moving party cannot have "two bites at the apple" by raising altogether new issues in a post judgment motion. *Id.* at 1239.

TELECOM urges that the court has misread the cases it cites in its conflict of law analysis. Those cases led the court to conclude that the Federal Maritime Lien Act, 46 U.S.C. § 971, *et seq.* was not intended to provide maritime liens for goods and services where, as here, they are supplied by foreign companies in foreign ports. *See Tramp Oil and Marine, Ltd v. M/V Mermaid I*, 805 F.2d 42 (1st Cir.1986); *Gulf Trading & Transp., Co. v. The Vessel Hoegh Shield*, 658 F.2d 363 (5th Cir.1981). TELECOM reasserts that the case of *Mobile Sales & Supply Corp. v. M/V Panamax Venus*, 1986 A.M.C. 420 (C.D.Cal. 1985), supports its argument that it is entitled to a lien under the Act. Upon review of the cases cited in the July 13, 1988 order and *Mobile Sales*, the court disagrees that it misinterpreted their meaning. The court is also perplexed by TELECOM's persistent reliance upon the *Mobile Sales* case.

In *Mobile Sales*, Mobil Oil, a New York corporation, supplied lube oil to the Liberian ship, Panamax Venus, at Kaohsiung, Republic of China. Mobile also supplied bunkers to the ship while it was in Yokohama, Japan by means of Japanese barges through what appears to have been a local supplying company. The court found that Mobil was entitled to a maritime lien against the vessel, pursuant to 46 U.S.C. §§ 971–75, for the necessaries supplied in both China and Japan. The court went on to hold that the lien was not entitled to priority, pursuant to 46 U.S.C. § 951, over the First Preferred Ship Mortgage held by Chase Manhattan Bank, because the necessaries were supplied in a foreign port rather than the United States.

*Mobile Sales* is entirely distinguishable from the present case. First, it did not confront a conflict of laws issue. Secondly, notwithstanding the conflicts of law issue, this court would have no difficulty finding that a maritime lien in favor of an American supplier who supplied goods in a foreign port. This is quite consistent with the Congressional intent discussed in *Tramp Oil* and *Gulf Trading*. However, in the instant case, "the claim for a lien is made by 'a Swedish based company, with no presence in the United States, that supplied radio equipment to a Panamanian flag vessel in Valencia, Spain, through the services of a Spanish subcontractor, under an agreement that was signed in Spain and Sweden and called for the application of Swedish law.'" (DE 86 at 6). As pointed out in the July 13, 1988 order, under the facts of this case, even if United States law was found to apply, the court would not provide Plaintiff the privilege of a maritime lien.

TELECOM also argues that the court was in error with respect to the factual scenario bearing upon its otherwise faulty (in Plaintiff's estimation) conflict of laws analysis. In considering whether the certainty or predictability of result required the court to apply American maritime law, the court stated that TELECOM

"knew that Pan Ocean [1] intended to sell the ship upon completion of reconstruction. There was no guarantee that the ship would be purchased by an American company nor that it would sail from American ports." (DE 84 at 10). TELECOM points out that the affidavit submitted with its Motion for Partial Summary Judgment (DE 81) indicates that the ship had been committed for a long term charter to an American company to be sailed from an American port. These facts were not reflected in the Joint Pretrial Stipulation (DE 82) of the parties. The court has no reason to distrust the information provided in the affidavit. Nevertheless, the facts presented therein are not sufficient to reverse the court's decision to apply Swedish law to the present controversy. In view of the facts as a whole, in conjunction with the fact that the choice of law provision in the rental and maintenance agreement between Pan Ocean and TELECOM indicated TELECOM's willingness to submit to Swedish law, the court finds that its earlier analysis was correct.

The final argument raised in TELECOM's Motion relates to the issue of its ownership of the radio equipment which was at the center of the conflict between it and Defendant, BAJAMAR. The claim to which the ownership issue pertains is BAJAMAR's alleged conversion of the equipment. As is pointed out in BAJAMAR's memorandum opposing this Motion, there was no conflict or choice of law issue raised as to the conversion claim. Therefore, the issue was analyzed under the law of Florida and disposed of in BAJAMAR's favor on the finding that it was a bona fide purchaser for value. TELECOM conceded in its Motion for Partial Summary Judgment that its claim of ownership could be defeated if BAJAMAR was afforded bona fide purchase status. It also stipulated to facts supporting the court's conclusion. TELECOM now argues for the first time that BAJAMAR would not fit the criteria required for bona fide purchaser status under Swedish law.[2] This argument is not only irrelevant in light of the court's analysis under Florida law, it is also an attempt to raise an entirely new issue which is impermissible in a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *American Home Assurance Co.,* 763 F.2d at 1239.

In view of all of the foregoing, it is hereby ORDERED and ADJUDGED that the Motion for Reconsideration (DE 88) of the Plaintiff, SWEDISH TELECOM RADIO is DENIED.

DONE and ORDERED.

---

1. Pan Ocean was the owner of the ship prior to its sale to Defendant, BAJAMAR.

2. To support its argument, TELECOM submits affidavits regarding Swedish law.