777 F.2d 1427
 1986 A.M.C. 2387
 NEAPOLITAN NAVIGATION, LTD., a Bahamas Corp.,
Plaintiff-Counter-Defendant- Appellant,
v.
TRACOR MARINE, INC., Defendant-Counter-Plaintiff-Third Party
Plaintiff- Appellee,
M/V "CHIMON", Etc., Third Party Defendant,
Uhlig & Associates, Inc., et al., Intervening Plaintiffs-Appellees.
 No. 82-6106.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 11, 1985.
 
 Allan Milledge, Milledge, Iden & Snyder, Dennis O'Conner, Miami, Fla., Eric J. Goldring, Goldring & Goldring, Maplewood, N. J., for Neapolitan Navigation, Ltd. and M/Y CHIMON.
 Anthony H. Pellee, Linwood Anderson, Smathers and Thompson, Miami, Fla., for Tracor Marine.
 Dixon, Dixon, Hurst & Nicklaus, James A. Dixon, Jr., Miami, Fla., for UHLIG Univ. Tech Serv., A. Scott, M. White, K. Ward.
 Appeals from the United States District Court, for the Southern District of Florida.
 Before GODBOLD, Chief Judge, and JOHNSON and CLARK, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 The present case involves a challenge to the constitutionality of procedures employed in the arrest of a vessel. Because those procedures denied the owner of the vessel a prompt post-arrest hearing on the propriety of the arrest, we hold that they were unconstitutional.
 
 I. Background
 
 2
 Appellant, Neapolitan Navigation, Ltd. ("Neapolitan") entered into an agreement with appellee, Tracor Marine, Inc. ("Tracor") for Tracor to conduct a major refitting of Neapolitan's 173-foot motor yacht, the M/Y CHIMON (the "CHIMON"). A dispute arose between the parties as to the quality of the repairs and the charges that Tracor assessed for the work. At the time the dispute arose, the CHIMON lay incapacitated in Tracor's shipyard, unable to be moved without being towed.
 
 
 3
 Negotiations over the dispute broke down, and on May 7, 1982, Neapolitan filed an in personam suit against Tracor claiming breach of maritime contract. On June 28, 1982, Tracor filed an answer and counterclaim in personam against Neapolitan, and filed a third-party complaint in rem against the CHIMON. In the third-party complaint, Tracor sought the arrest of the CHIMON in order to enforce a maritime lien.
 
 
 4
 An ex parte hearing was held before District Judge Norman C. Roettger, Jr., on June 28, 1982. Neapolitan had no prior notice of this hearing, as it did not receive the in rem complaint until June 30, 1982. At the ex parte hearing, the court issued a warrant of arrest in rem in favor of Tracor. The CHIMON was arrested the next day at Tracor's facilities. On July 7, 1982, on motion by Neapolitan, Judge Roettger appointed the Florida Yacht Basin to be substitute custodian of the CHIMON. The CHIMON was then towed to the Florida Yacht Basin.
 
 
 5
 On July 9, 1982, by written motion to District Judge Jose A. Gonzalez, Jr., the trial judge in the present case, Neapolitan requested a hearing on the arrest of the CHIMON and asked that the arrest be vacated. The trial court denied these requests in an order dated September 9, 1982. Neapolitan filed a motion for reconsideration of this order, which motion was denied on October 15, 1982.
 
 
 6
 Meanwhile, on September 9, 1982, motions to intervene were filed by intervenor-appellees Uhlig & Associates, Inc. ("Uhlig"), Universal Technology Services, Inc. ("UTEC"), and Austin Scott, Kevin Ward, and Michael White. Each of these intervenors was extensively involved in the refitting of the CHIMON. Over Neapolitan's objections, the trial court granted these interventions on November 17, 1982.
 
 
 7
 The intervenors submitted to the trial judge, ex parte, warrants of arrest in rem against the CHIMON and in favor of the intervenors. On November 24, 1982, prior to the issuance of these arrest warrants, Neapolitan filed an objection to the issuance of warrants of arrest in rem. Without a hearing, on December 14, 1982, the trial court issued three warrants of arrest in rem against the CHIMON and in favor of Uhlig, UTEC, and Scott, White, and Ward.
 
 
 8
 On November 1, 1982, Neapolitan filed its first notice of appeal in the present case. In this first appeal, Neapolitan interlocutorily appealed: (1) the issuance of the June 28, 1982, warrant of arrest in rem; (2) the trial court's order of September 9, 1982, denying the motion for a hearing on, and vacatur of, the CHIMON's arrest; and (3) the court's order of October 15, 1982, denying Neapolitan's motion for reconsideration. On December 30, 1982, Neapolitan filed a second notice of appeal, interlocutorily appealing the three warrants of arrest that had been issued on December 14, 1982. The two appeals were consolidated into the present action.
 
 
 9
 II. Constitutionality of the Arrest Procedures
 
 A. Facial Challenge to Rule C
 
 10
 Appellant challenges the facial constitutionality of Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims to the Federal Rules of Civil Procedure ("Rule C"), on the grounds that Rule C violates the procedural due process requirements of the Fifth Amendment. Rule C sets forth procedures governing actions in rem to enforce maritime liens. The main thrust of appellant's challenge is that Rule C does not require either notice or a hearing prior to the arrest of a vessel, or a post-arrest hearing at which a vessel's owner could challenge the propriety of the arrest. Appellant also contends that, because Rule C requires the court to issue an arrest warrant upon receipt of a verified complaint which alleges that the conditions for an in rem action exist, Rule C deprives the court of its discretion to determine whether a particular arrest is justified and, therefore, deprives the government of its strict control over legitimate force.
 
 
 11
 This Court recently addressed similar arguments in the context of a challenge to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims to the Federal Rules of Civil Procedure ("Rule B(1)"). See Schiffahartsgesellschaft Leonhardt v. A. Bottachi, 773 F.2d 1528 (11th Cir.1985) (en banc). Rule B(1), which governs maritime attachment and garnishment procedures, authorizes the attachment of a vessel without prior notice to the owner or a pre-attachment hearing, and without a prompt post-attachment hearing. Rule B(1) requires that the court issue a writ of attachment upon receipt of a verified complaint in an in personam maritime claim, which complaint is accompanied by an affidavit alleging that the defendant cannot be found within the district.
 
 
 12
 In Schiffahartsgesellschaft Leonhardt v. A. Bottachi, supra, 773 F.2d at 1528, the appellant challenged the constitutionality of the procedures employed in the attachment of its vessel. The en banc Court held that the writ of attachment procedures employed by the district court were authorized by the court's inherent power to apply traditional maritime law, and were not inconsistent with Rule B(1). See id. at 1533. Since the authority to employ those procedures was derived independently from Rule B(1), this Court held that it was unnecessary to decide whether Rule B(1) was constitutional on its face. See id. at 1531. Instead, this Court examined whether the procedures actually employed were consistent with the requirements of procedural due process under the Fifth Amendment, and concluded that they were.
 
 
 13
 There is no basis for distinguishing between the district court's inherent power to apply traditional maritime law in the context of maritime arrest procedures and the context of maritime attachment procedures. Therefore, the present case, although it involves a maritime arrest and not a maritime attachment, must be considered in light of the principles set forth in Schiffahartsgesellschaft. That case requires that we not consider the facial constitutionality of Rule C, and that we instead consider the constitutionality of the procedures employed by the district court. Accordingly, we do not reach the issue of whether Rule C is constitutional on its face, and we now consider the constitutionality of the procedures actually employed by the district court.
 
 B. Constitutionality of Procedures Employed
 
 14
 Appellant contends that the procedures employed in the present case were constitutionally deficient by failing to provide Neapolitan with: (1) pre-seizure notice of the CHIMON's arrest; (2) a pre-seizure hearing on the arrest; or (3) a prompt post-seizure hearing on the arrest. With respect to procedural due process requirements, there is no basis for distinction between the context of in personam maritime attachments and the context of in rem maritime arrests. Therefore, the procedures in the present case must be analyzed in accordance with the maritime procedural requirements set forth by this Court in Schiffahartsgesellschaft.
 
 
 15
 This Court held in Schiffahartsgesellschaft that due process does not require that an owner be given notice or a hearing prior to the attachment of his vessel. Id. at 1537. The justification for failing to provide notice or a hearing prior to the arrest of a vessel is that, if notice or a pre-seizure hearing is provided, there is a risk that the vessel will leave the jurisdiction. Neapolitan contends that, because the CHIMON was disabled and located in the facilities of Tracor when it was arrested, Neapolitan should have been given notice and a hearing prior to the CHIMON's arrest. If we accepted this argument, we would in effect require the in rem plaintiff to prove, prior to obtaining the arrest of a vessel, that the vessel is mobile and thus capable of leaving the jurisdiction. This determination in itself would have virtually the same consequences that notice and a pre-seizure hearing would entail. While the in rem plaintiff is trying to determine whether the vessel is mobile, the vessel could be sailing away. Furthermore, it may well be impossible for an in rem plaintiff to determine whether a vessel is mobile until the vessel is already under arrest. We therefore reject appellant's argument and hold that appellant was not entitled to notice or a hearing prior to the arrest of its vessel.
 
 
 16
 The district court's failure to provide a prompt post-seizure hearing is a far different matter. Although the usual due process requirements of notice and a pre-seizure hearing are overcome by the necessity of keeping a maritime vessel within the jurisdiction, there is no justification whatsoever for denying the vessel's owner a post-seizure hearing after the in rem arrest has taken place, and the vessel's presence is assured. In Schiffahartsgesellschaft this Court held that, where a vessel is seized, an immediate post-seizure hearing is an essential element of due process. This Court said:
 
 
 17
 We agree that " 'the basic protection required for the debtor is the assurance of a prompt postgarnishment hearing before a judge.' " [Citations.] Bottacchi's property was attached on May 25, 1982, and it received a hearing on May 26. If there were any procedural deficiencies or injustice in the issuance of the writ, it could have been raised at that time. An immediate post-attachment hearing strikes a workable balance between the creditor's need to reach the property before it leaves the court's jurisdiction and a debtor's fear that his property will be unjustly attached. Such a hearing provides a maritime debtor with the process he is due. [Citations.]
 
 
 18
 Id. at 1538-1539 (citations omitted).
 
 
 19
 In the present case, Neapolitan requested a post-seizure hearing on July 9, 1982, only 11 days after the CHIMON was arrested. Although initially Neapolitan's motion did not contain a sworn or verified statement of ownership, and thus did not necessarily establish a right to defend against the arrest of the vessel, see Rule C(6), Neapolitan cured this defect by submitting such a statement on July 26, 1982. Once Neapolitan established the right to defend against the arrest, the district court was required to hold an immediate hearing on the propriety of the CHIMON's arrest. The failure of the district court to hold an immediate post-seizure hearing was a denial of procedural due process, in violation of the Fifth Amendment.
 
 
 20
 The order of the district court denying a post-arrest hearing on the propriety of the arrest of the CHIMON is REVERSED. The present case is REMANDED to the district court for hearings on the propriety of each existing warrant of arrest in rem against the CHIMON.