966 F.2d 613
 1992 A.M.C. 2636, 23 Fed.R.Serv.3d 130
 TRINIDAD FOUNDRY AND FABRICATING, LTD., Plaintiff-Appellant,
v.
M/V K.A.S. CAMILLA, her engines, boilers, tackle, etc., In
Rem, K/A Kasmi, in Personam, K. Arnesen Shipping
A/S, In Personam, Defendants-Appellees.
 No. 91-5360.
 United States Court of Appeals,
Eleventh Circuit.
 July 15, 1992.
 
 Richard J. McAlpin, Mitchell, McAlpin & Associates, Jeffrey H. Simcox, Palmber, Biezup & Henderson, Philadelphia, Pa., for plaintiff-appellant.
 Patrick E. Novak, Keller, Houck & Shinkle, P.A., Miami, Fla., for M/V K.A.S. Camilla.
 Appeal from the United States District Court for the Southern District of Florida.
 Before EDMONDSON and DUBINA, Circuit Judges, and ATKINS*, Senior District Judge.
 DUBINA, Circuit Judge:
 
 
 1
 The question presented in this appeal is whether an English statutory right in rem constitutes a maritime lien for purposes of jurisdiction under Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule C").[1] The district court answered the question in the negative and dismissed the in rem action for lack of jurisdiction. For the reasons which follow, we affirm.
 
 I. BACKGROUND
 
 2
 Trinidad Foundry and Fabrication Ltd. ("Trinidad") is a corporation organized under the laws of Trinidad, West Indies, with its principal place of business located there. The M/V K.A.S. Camilla ("Camilla") is a Norwegian flag vessel owned by K/S Kasmi and K. Arnesen Shipping A/S ("the owners"). The owners are corporations organized under the laws of foreign countries, which have their principal places of business outside the United States.
 
 
 3
 At the request of the owners and pursuant to a repair contract, Trinidad made certain repairs and provided other "necessaries"[2] to the Camilla at its repair facility in Trinidad. The repair contract specifically provided that the owners were to pay the full amount of the repairs plus interest and that all aspects of the agreement were to be governed by English law. The owners, however, failed to pay the outstanding balance due on the repair contract.
 
 
 4
 Subsequently, Trinidad filed an in rem admiralty action against the Camilla and an in personam action against the owners in the United States District Court for the Southern District of Florida for the monies owed it for the repairs. Trinidad asserted jurisdiction under Rule C.[3] The district court issued an order for a writ of arrest as to the Camilla. The owners made a special appearance for the sole purpose of challenging the court's in rem jurisdiction as to the Camilla and filed a motion to dismiss. Trinidad filed a memorandum and affidavits in opposition to the owners' motion. One of Trinidad's affidavits states that, in England, repairs are recognized as necessaries and, therefore, carry a right to issue a writ in rem against a vessel. The owners then posted a Letter of Credit and thereby secured the release of the Camilla.
 
 
 5
 The district court dismissed the in rem action against the Camilla finding that it lacked in rem jurisdiction because an English in rem action could not be considered tantamount to an American maritime lien under Rule C. Trinidad then perfected its appeal.
 
 II. DISCUSSION
 
 6
 Trinidad argues that there are two proper bases for in rem jurisdiction over the Camilla under Rule C: (1) a maritime lien, and (2) a lien pursuant to a United States statute. We agree with the district court that Trinidad possessed neither a maritime lien nor a statutory lien.
 
 A. Maritime Lien
 
 7
 Rule C(1)(a) is procedural[4] and sets forth the means to file an in rem action to enforce a maritime lien.[5] Neapolitan Navigation, Ltd. v. Tracor Marine, Inc., 777 F.2d 1427, 1429 (11th Cir.1985). The requirements of Rule C are to be read literally, and a vessel is not considered to be within the court's in rem jurisdiction when the rule has not been complied with, absent an agreement between the parties to the contrary. Nuta v. M/V Foutas Four, 753 F.Supp. 352, 353-54 (S.D.Fla.1990). However, maritime liens are not created by Rule C. Amstar Corp. v. S/S Alexandros T., 664 F.2d 904, 908 (4th Cir.1981). Instead, they are an aspect of substantive, rather than procedural maritime law. Id.
 
 
 8
 The contract agreed to by the parties in the present case states that English law shall govern. Such clauses are enforceable. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 516, 94 S.Ct. 2449, 2455, 41 L.Ed.2d 270 (1974); Complaint of Sun Schiffahrts G.m.b.H. & Co., K.G., 608 F.Supp. 51 (E.D.Pa.1984). Therefore, English substantive maritime law governs this dispute.
 
 
 9
 When analyzing foreign law, the district court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. Fed.R.Civ.P. 44.1. In this case, the owners rely on an affidavit by Michael Francis Mallin ("Mallin"), a solicitor of the Supreme Court of England and Wales. Mallin's affidavit states that under English law various maritime liens exist by virtue of judicial development,[6] but no maritime lien is created by the furnishing of repairs and services to a vessel. Mallin asserts that instead of a maritime lien sections 20(2)(m) and (n) of the Supreme Court Act of 1981 ("SCA") provide that an action in rem may be initiated for "any claim in respect to goods or materials supplied to a ship for her operation or maintenance" and "any claim in respect of the construction, repair or equipment of a ship or in respect of dock charges or dues." Affidavit of Michael Francis Mallin.
 
 
 10
 Neither of the affidavits submitted by Trinidad contradict Mallin's affidavit; in fact, the affidavit executed by Robert David Crighton ("Crighton"), a member of the English bar, admits that there are differences between an English maritime lien and an English action in rem.
 
 
 11
 The differences between an English action in rem and an English maritime lien were further explained in the leading English case, the Heinrich Bjorn, 10 P.D. 44 (C.A.1885) as follows:
 
 
 12
 [A] maritime lien arises the moment the event occurs which creates it; the proceeding in rem which perfects the inchoate right relates back to the period when it first attached: "the maritime lien travels with the thing into whosesoever possession it may come" ... and the arrest can extend only to the ship subject to the lien. But, on the contrary, the arrest of a vessel under the [in rem] statute is only one of several possible alternative proceedings ...; no right in the ship or against the ship is created at any time before the arrest; it has no relation back to any earlier period; it is available only against the property of the person who owes the debt for necessaries; and the arrest need not be of the ship in question, but may be of any property of the defendant within the realm. The two proceedings, therefore, though approaching one another in form, are different in substance: in the one case the arrest is to give effect to a pre-existent lien, in the other, the arrest is only one of several alternative modes of procedure....
 
 Id. at 64. (Citations omitted.)
 
 13
 In The John G. Stevens, 170 U.S. 113, 18 S.Ct. 544, 42 L.Ed. 969 (1898), the United States Supreme Court acknowledged the distinction between a materialman's claim and a maritime lien by stating:
 
 
 14
 [B]y the law of England, materialmen, without possession, have no maritime lien for supplies, even to a foreign ship, but a mere right to seize the ship by process in admiralty, in the nature of an attachment. "Claims for necessaries, ... do not possess ... a lien; but carry only a statutory remedy against the res, which is essentially different."
 
 
 15
 Id. at 117, 18 S.Ct. at 546. (Citations omitted.) A maritime lien is strictly construed and cannot be extended by construction, analogy or inference. Fathom Expeditions, Inc. v. M/T Gavrion, 402 F.Supp. 390, 397 (M.D.Fla.1975) (citing Vandewater v. Mills (THE YANKEE BLADE), 60 U.S. (19 How.) 82, 89, 15 L.Ed. 554 (1857)). Therefore, under both English law and the Supreme Court's interpretation of English law, a claim for necessaries is not a maritime lien.
 
 
 16
 More recently, this issue was persuasively resolved in North End Oil, Ltd. v. M/V Ocean Confidence, 777 F.Supp. 12 (C.D.Cal.1991). In that case, North End Oil ("NEO") filed a complaint in rem alleging a maritime lien against the vessel, Ocean Confidence, based on the alleged failure of Mitsui O.S.K. Lines, Ltd. ("Mitsui"), the charterer, to pay for bunkers that were to be used on the ship. When the district court issued a warrant for the vessel's arrest, Mitsui entered a special appearance to defend on behalf of the vessel, seeking, among other things, to dismiss the complaint for lack of jurisdiction and for failure to state a claim. The district court found that English law governed and dismissed the action for lack of jurisdiction because English law did not recognize an enforceable maritime lien and did not give NEO a right to proceed in rem against the Ocean Confidence.
 
 
 17
 The district court held that an "action in rem must be initiated by a writ issued by the Admiralty Registry of the High Court and must be served within that court's jurisdiction." Since NEO did not have such a writ, an English court would not recognize its maritime lien. In an alternative holding, the district court reasoned that because NEO had no substantive right to a maritime lien under English law, it could not use an American procedural device, i.e., the in rem action, to create such a right.
 
 
 18
 Likewise, we hold that there is no jurisdictional basis for an in rem action to enforce a maritime lien, pursuant to Rule C(1)(a). In England a claim for repairs or necessaries does not give rise to a maritime lien, but merely yields a statutory right in rem. See, William Tetley, Maritime Liens and Claims p. 236 (1985). A statutory right in rem under English law is not equivalent to an American maritime lien. Because a maritime lien is a prerequisite for an action in rem under Rule C(1)(a), the district court lacked jurisdiction over the Camilla.[7]
 
 B. Statutory Lien
 
 19
 Alternatively, Trinidad argues that the in rem action against the Camilla was permissible under Rule C(1)(b), pursuant to the Maritime Lien Act, 46 U.S.C. § 31342 (1990).[8] We reject that argument for two reasons. First, § 31342 does not provide for a maritime lien for goods and services supplied by a foreign plaintiff to foreign flag vessels in foreign ports. Tramp Oil and Marine, Ltd. v. M/V Mermaid I, 805 F.2d 42, 46 (1st Cir.1986); Swedish Telecom Radio v. M/V Discovery I, 712 F.Supp. 1542, 1545-46 (S.D.Fla.1989).[9] In the present case, it is undisputed that all of the parties and the vessel are foreign, and the repairs to the vessel were furnished in a foreign port. Accordingly, Trinidad has no lien under § 31342. Second, § 31342 is not even applicable to this case because, as we have already held, English law governs. Consequently, Trinidad may not maintain an action under Rule C(1)(b).
 
 
 20
 We have also reviewed the recent case of Sembawang Shipyard, Ltd. v. Charger, Inc., 955 F.2d 983 (5th Cir.1992), and note that the facts and the reasoning employed therein are similar to our analysis here. In Sembawang, a Singapore ship repairer contracted with a Liberian vessel, the Charger, to perform various repairs at its Singapore shipyard. The contract specified that Singapore law governed all aspects of the transaction. After the Charger defaulted, the repairer moved to arrest the vessel pursuant to Rule C.
 
 
 21
 The Fifth Circuit held that the arrest was improper because no applicable United States statute provided for a maritime action in rem, as required by Rule C(1)(b), and no maritime lien existed for repairs to a ship under the laws of Singapore,[10] as necessitated by Rule C(1)(a). Therefore, the repairer could not proceed against the vessel in rem under Rule C. However, the Fifth Circuit refused to grant the vessel's motion to dismiss for lack of jurisdiction because it found that the repairer could have attached the vessel under Rule B.[11] Instead, the court treated the matter as a technical pleading error and allowed the repairer to proceed under Rule B.
 
 
 22
 In the present case, Trinidad, like Sembawang, could have filed an attachment action against the vessel, the Camilla, under Rule B; however, Trinidad chose to proceed under Rule C. Although the Sembawang court's reasoning is analogous to our reasoning in almost all respects,[12] we disagree with that part of its holding allowing the repairer to proceed under Rule B because of our view that the Camilla would be prejudiced if we allowed Trinidad to proceed under Rule B at this late stage of the litigation.
 
 III. CONCLUSION
 
 23
 For the foregoing reasons, we agree with the district court that Trinidad's rights against the Camilla are insufficient and not of the requisite type to establish in rem jurisdiction under Rule C. Since the district court properly dismissed the action against the Camilla, the judgment of the district court is affirmed.
 
 
 24
 AFFIRMED.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 We have appellate jurisdiction over this appeal, pursuant to 28 U.S.C. § 1292(a)(3), to decide whether subject matter jurisdiction exists in this case
 
 
 [2]
 Necessaries are the items that a prudent owner would provide to enable a ship to perform the functions for which she has been engaged and include most goods or services that are useful to the vessel to keep her out of danger and enable her to perform her particular function. Equilease Corp. v. M/V Sampson, 793 F.2d 598, 603 (5th Cir.), cert. denied, 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986). These items may be money, labor, skill, material, or personal services. Id
 
 
 [3]
 Rule C states, in part, "Actions in Rem: Special Provisions (1) When Available. An action in rem may be brought: (a) To enforce any maritime lien; (b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto."
 
 
 [4]
 "These Supplemental Rules apply to the procedure in admiralty and maritime claims within the meaning of [Fed.R.Civ.P.] 9(h) with respect to the following remedies: (1) Maritime attachment and garnishment; (2) Actions in rem; (3) Possessory, petitory, and partition actions; (4) Actions for exoneration from or limitation of liability." Rule A, Supplemental Rules for Certain Admiralty and Maritime Claims
 
 
 [5]
 The rule requires a district court to issue a warrant upon receipt of a verified complaint which alleges that the conditions for an in rem action exist. Rule C(2)
 
 
 [6]
 Mallin states that maritime liens attach to claims for: (a) salvage, (b) damage done by a ship, (c) seaman's wages, (d) master's wages, (e) master's disbursements, (f) bottomry and respondentia
 
 
 [7]
 Trinidad argued in its brief and at oral argument that Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner, 724 F.2d 1161 (5th Cir.1984) is applicable to this case and supports its position. After a thorough review of Belcher, we conclude that it is factually distinguishable. However, assuming arguendo that Belcher is applicable, it supports the appellees' argument because it asserts that a maritime lien on a vessel is a prerequisite to an action in rem. Id. at 1163
 
 
 [8]
 Section 31342(a) states in part,
 [A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner--
 (1) has a maritime lien on the vessel;
 (2) may bring a civil action in rem to enforce the lien; and
 (3) is not required to allege or prove in the action that credit was given to the vessel.
 
 
 [9]
 Both Swedish Telecom and Tramp were governed by former 46 U.S.C. § 971. Although that section was repealed by Pub.L. 100-710, Title I, § 106(b)(2), Nov. 23, 1988, 102 Stat. 4752, Swedish Telecom and Tramp remain persuasive because the same act that repealed § 971 created 46 U.S.C. § 31342 and the legislative history to § 31342 states, "[t]his section makes no substantive change to [the] law." H.R.Rep. 918, 100th Cong., 2d Sess. 7, reprinted in 1988 U.S.C.C.A.N. 6104, 6141
 
 
 [10]
 In all aspects relevant to the Fifth Circuit case, and to the present case, Singapore and English law are the same
 
 
 [11]
 Rule B(1) states in part: "With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels ... if the defendant shall not be found within the district." Rule B, Supplemental Rules for Certain Admiralty and Maritime Claims
 
 
 [12]
 The Sembawang court notes that the district court's opinion in this case, published at 776 F.Supp. 1558 (S.D.Fla.1991), follows the same line of reasoning. See Sembawang, 955 F.2d at 988 n. 5