The STEAMSHIP MUTUAL UNDER-WRITING ASSOCIATION (BER-MUDA) LIMITED, Plaintiff,

v.

COVE SHIPPING, INC., Cove Trading, Inc., Cove Liberty Corp., and Maritime Endeavor Associates L.P., Defendants.

No. Civ.A. 95–0807–AH–M.

United States District Court,
S.D. Alabama,
Southern Division.

June 19, 1998.

---

Sidney H. Schell, Mobile, AL, for Steamship Mutual Underwriting Association (Bermuda) Limited, plaintiff.

Irvin Grodsky, Mobile, AL, Edward S. Sledge, III, Brian P. McCarthy, Michael D. Knight, McDowell Knight Roedder & Sledge, L.L.C., Mobile, AL, for Cove Shipping, Inc., Cove Liberty Corp., Cove Trading, Inc., Maritime Endeavor Associates, L.P., defendants.

Edward S. Sledge, III, Brian P. McCarthy, Michael D. Knight, McDowell Knight Roedder & Sledge, L.L.C., Mobile, AL, for MV Cove Endeavor, defendant.

## ORDER

HOWARD, Senior District Judge.

This matter is before the Court on the bench trial of this action held on April 23 and 24, 1998. After considering the evidence and testimony presented at trial as well as the affidavits and other materials submitted by the parties regarding English law, the Court makes the following findings of fact and conclusions of law and **HOLDS** that plaintiff has proven by a preponderance of the evidence that judgment should be entered in its favor against the defendants. Accordingly, the Court **HOLDS** that plaintiff Steamship Mutual Underwriting Association (Bermuda) Limited shall have and recover the sum of **$520,975.03** from defendants Cove Shipping, Inc., Cove Trading, Inc., Cove Liberty Corp. and Maritime Endeavor Associates L.P.

### FINDINGS OF FACT

1. Plaintiff Steamship Mutual Underwriting Association (Bermuda) Limited ("Steamship" or "the Club"), which is run out of London, England, is a mutual underwriting association or club that provides protection and indemnity insurance ("P & I") to Club members' vessels. Club members have an insurable interest in a ship and mutually insure each other against various risks.

2. Defendant Cove Trading, Inc. is a corporation which owned the vessel COVE TRADER, defendant Cove Liberty Corp. owned the vessel COVE LIBERTY, defen-

dant Maritime Endeavor Associates L.P. owned the vessel COVE ENDEAVOR, and defendant Cove Shipping, Inc. ("CSI") served as the manager for the three ships (hereinafter collectively referred to as "Cove" or "the Cove entities"). Andrew Garbis is the vice president and member of the board of Cove Shipping, Inc., has served as an officer of Cove Liberty and Cove Trading and is the president and chairman of the board of Maritime Endeavor.

3. Robert Johnston is a partner with Alfred Stocken, the managing partnership for Steamship. Johnston has been with Stocken and, therefore, Steamship for 24 years.

4. Prior to 1987, the Cove entities had been members of the West of England P & I club. That club, however, had notified Cove that the insurance rates for the upcoming year would be greatly increased. Accordingly, Andrew Garbis instructed his U.S. insurance broker, John P. Tilden Ltd. ("Tilden"), to look for alternate P & I coverage for Cove. Garbis specifically suggested that Tilden look into Steamship as he had met with Johnston before, and Garbis felt that there would be good cooperation between Cove and Steamship.

5. Tilden retained a London placing broker, Peter Smart & Associates ("PSA"), to place Cove's insurance business with Steamship. Peter Smart and Martin O'Malley were the main individuals at PSA who worked on the Cove account.

6. Cove was entered into the Steamship club in February of 1987. Because of an international agreement of which Steamship and West of England are a part, Steamship had to quote the same premium for membership to Cove that West had offered for Cove's first year of membership with Steamship. Due to negotiations between the various brokers and representatives of Steamship, however, Cove anticipated a lower premium during its second year of club membership.

7. The vessels entered into the Club in 1987 were COVE LIBERTY, COVE TRADER and COVE LEADER. The COVE LEADER was eventually sold, and the COVE ENDEAVOR was entered into the club in 1992.

8. After Cove had joined Steamship, negotiations began regarding Cove's premium for the following year. Steamship eventually agreed to reduce Cove's premium 30 percent for the 1988–1989 and 1989–1990 insurance policy years. Cove paid 7½ percent of the amount of its premium as a commission to its insurance brokers with 5 percent being paid to Tilden and PSA receiving 2½ percent.

9. In May of 1989, Peter Smart approached Steamship regarding a commission payment on the Cove account for the 1988–1989 and 1989–1990 years to which Steamship agreed. Steamship paid 10 percent of Cove's premium to PSA as a commission for the two year period. The total commission paid directly to PSA by Steamship was $71,495.10.

10. Steamship put notice of the commission payments in the broker chain by passing credit notes regarding the commission to PSA. The broker chain consisted of the chain of communication between Steamship to Cove. Specifically, Steamship communicated with PSA which sent the communications to Tilden which then forwarded the communications to Cove. Brokers discouraged P & I clubs from directly communicating with their insureds such as Cove. While Steamship had had direct communication with Cove on occasion in the past, representatives of Tilden had argued with Steamship over the practice and had demanded that Steamship abide by the proper broker chain.

11. PSA failed to pass the information regarding the 10 percent commission paid by Steamship to Tilden or Cove because it was improper for them to receive commissions from both the insurer and the insured. Neither Tilden nor Cove were aware of the commissions until after the institution of the instant action. Steamship, however, was also unaware that PSA was receiving double commissions. While it is not improper for a club to pay a commission directly to a broker, the circumstances in the instant case are unusual in that Steamship paid the commission retroactively.

12. In 1995, Steamship canceled the insurance coverage for the Cove account because of non-payment of premiums. The agreed amount of damages being sought by plaintiff is for $592,470.13 for past due premiums and calls. All of the amount due to plaintiff is attributable to premiums or calls assessed against the COVE TRADER and COVE LIBERTY. No part of the above balance is attributable to calls or premiums against the COVE ENDEAVOR.

## CONCLUSIONS OF LAW

### I. CHOICE OF LAW

Rule 36 of Steamship's club rules specifies that the rules and any contract of insurance between the Club and any member shall be governed and construed in accordance with English law. The parties agree that English law controls the outcome of this action. Federal Rule of Civil Procedure 44.1 provides in pertinent part that, "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *See also Trinidad & Foundry & Fabricating Ltd. v. M/V K.A.S. CAMILLA,* 966 F.2d 613 (11th Cir.1992). Accordingly, the Court has reviewed and considered various affidavits from experts on English law submitted by the parties as well as English statutes, case law, and treatises in determining the law applicable to this action.

### II. JOINT AND SEVERAL LIABILITY

█ Plaintiff contends that all of the defendants are jointly and severally liable for the premiums and calls of the other defendants pursuant to the relevant Certificates of Entry as well as the Club rules. Defendants argue that no joint and several liability exists so that neither CSI nor Maritime Endeavor is liable for the calls or premiums due on account of the COVE LIBERTY and COVE TRADER.

In 1992, the COVE ENDEAVOR was entered into Steamship under Cove's account. An addendum to the Certificate of Entry and Acceptance which evidences the entry of the COVE LIBERTY and the COVE TRADER was issued by Steamship dated February 27, 1998. The endorsement issued by Steamship states that: "[i]t is hereby noted and agreed that cover hereunder is extended to include the following vessel on the same terms and conditions with effect from 12th August 1992 ... All other terms and conditions remain unaltered." The endorsement further provides that the additional vessel being covered was the COVE ENDEAVOR owned by Maritime Endeavor Associates L.P.

The Certificate of Entry and Acceptance next issued on the Cove account stated that coverage for the listed members was for the year of February 20, 1993 to February 20, 1994, "or until sold, lost, withdrawn or the entry is terminated in accordance with the rules, to the extent specified and in accordance with the Act, Bye–Laws and the Rules from time to time in force and the special terms (if any) specified overleaf." The Certificate also provides that "[y]our name has been entered in the Register of Members of the Club as a Member. FOR ACCOUNT OF Maritime Challenge Corp (Bareboat Charterers) and/or Cove Shipping Inc. (Managers) and/or Owners as below." The owners listed are Cove Liberty Corporation for the COVE LIBERTY, Cove Trading Inc. for the COVE TRADER and Maritime Endeavor Associates, L.P. for the COVE ENDEAVOR.

Attached to the Certificate of Entry are documents which include a "Co–Assured Clause" which states that:

This cover afforded to:

Maritime Challenge Corp and Cove Shipping Inc.

hereinafter referred to as the Additional Assured in their capacity as:

Bareboat Charterers and Managers respectively

shall extend only to risks, liabilities and expenses arising out of operations and/or activities customarily carried on by or at the risk and responsibility of Shipowners and which are within the scope of the Member's operations as an Owner insured hereunder, but which are in fact performed by the Additional Assured because of the provisions of a particular Charter Party or other Contract.

Conduct of any one of the parties insured hereunder which is sufficient to bar that insured's rights under this Policy shall bar the rights of recovery of all the said insured.

Rule 14 of the Club rules provides in pertinent part that:

If an entry is made in the names of or on behalf of more persons than one (hereinafter referred to as Joint Members) they shall be jointly and severally liable to pay contributions due to the Club in respect of such entry; and the receipt by any one Joint Member of any sums payable by the Club in respect of such entry shall be sufficient discharge of the Club for the same.

The cover extended to Joint members shall extend only to risks, liabilities, costs and expenses arising out of operations and/or activities customarily carried on by or at the risk and responsibility of shipowners and which are within the scope of the cover provided under the terms, conditions and exceptions provided by these Rules and by the Certificate of Entry.

The conduct of any one Joint Member which is sufficient to bar that Joint Member's right of recovery under the terms, conditions and exceptions provided by these Rules and by the Certificate of Entry shall bar absolutely the rights of recovery of all Joint Members thereunder.

In support of its position, plaintiff has filed affidavits of the Right Honourable Sir Michael Kerr, an English barrister and retired Lord Justice of Appeal who sat in the Court of Appeal. Sir Kerr studied the relevant Certificates of Entry and Club rules in preparation for the instant action and opines that, pursuant to English law and the language of the rules and Certificate of Entry, all of the defendants are indeed joint members in the Club and thus jointly and severally liable for any calls and premiums payable with respect to any of the subject vessels. Defendants have offered the affidavits of Nicholas Archibald Hamblen, an English barrister, who disagrees with Kerr. Hamblen accordingly argues that no joint or several liability exists between the defendants.

The Court, after reviewing the affidavits, the Club rules, Certificates of Entry and other submitted documents, holds that defendants are jointly and severally liable for the debts of each other. Defendants place great weight on the existence of a "Co–Assured Clause" attached to the Certificate of Entry arguing that its presence must indicate that the co-assureds are not joint members. The Court, however, disagrees. Instead, the Court believes that Sir Kerr correctly summarizes the relevance of the Co–Assured Clause when he states that:

In my view the Co–Assured Clause defines the scope of cover afforded to the persons or entities named in it whatever may be their capacity in relation to the entered vessels in question.... However, the Co–Assured Clause does not determine the status of the persons named in it as members. Nor does it impose any liability for calls, which is the hallmark of membership. Indeed, the Co–Assured Clause does not deal with membership at all. These matters are dealt with by the Entry on the face of the Certificates and by the Rules. So far as Joint Membership is concerned, Rule 14 ... provides that where an entry is made in the name of more persons than one, they shall be Joint Members. This is the governing provision. The crucial issue is therefore: in whose name was the entry made? The answer to this question appears on the face of the Certificates.

(Affid. of Kerr, 2/10/97 at ¶ 6.) The Court finds that the Certificate of Entry demonstrates that CSI and the owners of the vessels were jointly entered in the Club pursuant to Rule 14. Accordingly, the joint and several liability imposed by Rule 14 applies to all defendants.

While, as defendants point out, the COVE ENDEAVOR was entered into the Club at a later date than the other vessels, the endorsement to the Cove Certificate of Entry as well as subsequent Certificates establish that that vessel and its owner, Maritime Endeavor Associates L.P., ("MEA") were entered into the Cove account by the same terms that applied to the other members. Accordingly, the Court holds that MEA is likewise subject to joint and several liability.

Defendants offer various arguments regarding why the language of the Certificate of Entry cannot impose joint and several liability on the defendants, but the Court finds that the plain language of the Certificate and Club rules compels the instant holding.

The Court likewise notes that defendants' own witness, J. Robert Wilson, who was the representative from Tilden on the Cove account, testified that he always understood that joint and several liability applied to the Cove account and any other similar fleet of vessels. While defendants point out that Tilden was no longer the Cove agent when the COVE ENDEAVOR was added to the Cove account, his testimony reveals that at least Cove's agents possessed the knowledge that entries such as the Cove Certificate of Entry resulted in the imposition of joint and several liability on the entered members.

The Court also finds instructive the manner in which Cove was always treated by Steamship as well as the manner in which Cove behaved towards Steamship. The Cove account was always treated as one account with the premiums being paid together. Cove had even attempted in the past to have the premiums of one vessel attributed to another of its joint vessels in the Cove fleet. Only when Cove failed to pay the premiums and calls due for some of its vessels did Cove seek to separate the various entities which made up the Cove account and assert that the entities were wholly separate. Up until these events transpired, Cove evidently had no problems with the account being treated as one fleet.

Defendants also argue that under Alabama agency law and the Alabama statute of frauds CSI cannot be held liable for the debts of the shipowners. By the terms of the Club rules and agreement of the parties, however, this action is governed by English law. Accordingly, the Court finds these arguments wholly without merit.

### III. STEAMSHIP'S COMMISSION PAYMENTS TO PSA

#### A. Whether Defendants Can Rescind the Insurance Contracts for the 1988–1989 and 1989–1990 Years

■ Defendants allege that the commissions paid to PSA by Steamship represent secret commissions to its agent which constitute bribes under English civil law thus allowing Cove to rescind their insurance contracts with Steamship for the period during which the alleged bribes were paid. Under English law:

> For the purposes of the civil law a bribe means the payment of a secret commission, which only means (i) that the person making the payment makes it to the agent of the other person with whom he is dealing; (ii) that he makes it to that person knowing that that person is acting as the agent of the other person with whom he is dealing; and (iii) that he fails to disclose to the other person with whom he is dealing that he has made that payment to the person whom he knows to be the other person's agent. Those three are the only elements necessary to constitute the payment of a secret commission or bribe for civil purposes. [P]roof of corruptness or corrupt motive is unnecessary in a civil action....

*Industries & Gen. Mortgage Co. v. Lewis*, 2 All E.R. 573 (K.B.1949). Moreover, "inasmuch as the amount of the bribes has been quantified, it can be recovered as money had and received.... When a [principal] finds out this state of things, he may call upon his agent or the [bribe payer] to disgorge." *Hovendon & Sons v. Millhoff*, 83 L.T. 41, 42 (CA.1900).

The Court also notes that:

> any surreptitious dealing between one principal and the agent of the other principal is a fraud on such other principal.... [It is] equally clear that the defrauded principal, *if he comes in time*, is entitled, at his option, to have the contract rescinded, or, of he elects not to have it rescinded, to have such other adequate relief as the Court may think right to give him.

*Taylor v. Walker*, 1 Lloyd's List L.Rep. 490, 510 (Q.B.1958) (emphasis added). However, a bribe will not be found to have been made by plaintiff if it is customary in the P & I industry for a P & I club to pay such a commission to an insured's agent. *See Baring v. Stanton*, 3 Chan.Div. 502 (1872); *Great*

*Western Ins. Co. v. Cunliffe,* 9 Chan.App. 525 (1874).

The Court finds that the payment of a commission by a P & I club to an insured's agent is not extraordinary in the London P & I market. However, the manner in which the instant commissions were paid was not customary. While the payment itself is not suspect as defendants allege, the retrospective nature of the payment sets it outside the customary commission payment so that plaintiff does not fall within the above-noted exception to the prohibition against paying a secret commission to another's agent. It was not until May of 1989 that PSA approached Steamship regarding the payment of the commission, and the commission that was paid was for the 1988–1989 and 1989–1990 years. The Court finds that the usual practice would be to determine the amount of any commission prior to the establishment or re-negotiation of the insurance contract.

■ Plaintiff placed documents in the broker chain regarding the payment of the commissions which PSA failed to forward to Tilden or Cove. While this is the established method of communication between a P & I club and its insured, the Court holds that this is insufficient in this instance to satisfy the disclosure to the principal required by the English authorities. The Court therefore holds that Steamship did indeed pay what amounts to a civil bribe under English law. Defendants may not rescind the insurance contracts for those policy years, however, because they did not *come in time* to receive such a remedy. *See Taylor,* 1 Lloyd's List L.Rep. 490. That is, defendants cannot rescind a contract at this late date which was carried out a decade ago. Both sides have already received the benefits of the contracts, and the Court is unwilling to now undo that which was done so long ago. The Court therefore holds that the amount of the commissions paid, $71,495.10, shall be used to set off the amounts which the Court today finds is owed by defendants to the plaintiff.

## B. Whether Cove Can Avoid All Insurance Contracts with Steamship

■ Defendants next contend that, because plaintiff did not disclose the aforementioned commission payments to PSA, they can avoid all of the subsequent insurance contracts between Steamship and Cove. Specifically, defendants maintain that plaintiff breached its duty of utmost good faith to Cove. This argument is based upon the Marine Insurance Act 1906, 6 Edw. 7, ch. 41, which provides at section 17 that: "A contract of marine insurance is a contract based upon the utmost good faith, and, if the utmost good faith be not observed by either party, the contract may be avoided by the other party." "[A]ny facts known to the insurer but not to the insured, which would reduce the risk, should be disclosed by the insurer." *Banque Financiere de la Cite S.A. v. Westgate Ins. Co.,* 2 A.C. 249, 281, 282 (H.L.1991). In other words:

> the duty falling upon the insurer must at least extend to disclosing all facts known to him which are material either to the nature of the risk sought to be covered or the recoverability of a claim under the policy which a prudent insured would take into account in deciding whether or not to place the risk for which he seeks cover with that insurer.

*Id.* at 268 (quotation marks and citation omitted).

The Court holds that the non-disclosure complained of regarding the payment of commissions does not satisfy the requirements necessary for defendants to avoid the obligations of the defendants to pay the premiums which are the subject of this suit. The commissions do not affect the risk involved or the recovery of any claim involved with the insurance contracts. While defendants argue that they would have canceled their insurance had they known of such commission payments, the Court finds this insufficient for defendants to avoid the insurance contracts at issue under the theory of a breach of the duty of utmost good faith.

## CONCLUSION

Based upon the foregoing, the Court **HOLDS** that plaintiff Steamship has established by a preponderance of the evidence that judgment should be entered in its favor against all of the defendants. As stipulated by the parties, the Court **FINDS** the amount

due to plaintiff is $592,470.13 but that said amount should be set off by $71,495.10. Accordingly, the Court **HOLDS** that plaintiff Steamship Mutual Underwriting Association (Bermuda) Limited shall have and recover the sum of **$520,975.03** from defendants Cove Shipping, Inc., Cove Trading, Inc., Cove Liberty Corp. and Maritime Endeavor Associates L.P.

### *JUDGMENT*

This matter having come before the Court on a bench trial held on April 23 and 24, 1998, and in accordance with the Findings of Fact and Conclusions of Law entered this day, it is hereby **ORDERED, ADJUDGED** and **DECREED** that the plaintiff have and recover of the defendants, Cove Shipping, Inc., Cove Trading, Inc., Cove Liberty Corp. and Maritime Endeavor Associates L.P. the sum of **$520,975.03**. Costs are taxed against defendants.