[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-12183
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 19, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00770-CV-ORL-19-DAB

VESTOIL, LTD,
a Cyprus corporation,

Plaintiff-Appellant,

versus

M/V M PIONEER, her engines, tackle, gear,
furniture, apparel, equipment, appurtenances, etc.,
in rem,
a.k.a. Spioneer,
FINANCIAL SHIPPING ENTERPRISE, LTD.,
a Malta corporation, in personam,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 19, 2005)

Before BIRCH, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Vestoil, Ltd. appeals the district court's order dismissing Vestoil's Rule C

complaint against the in rem defendant M/V M Pioneer for lack of personal

jurisdiction.[1] We will affirm.

**I.**

Vestoil, a Cyprus corporation with its principal place of business in Greece,

supplies bulk marine fuel oil and bunkers to vessels throughout the world. In

December 2002, Vestoil agreed to supply a large amount of fuel oil to the M

Pioneer, formerly the S Pioneer, for delivery on January 1, 2003, at a location near

Singapore. At the time, the M Pioneer flew under the Panamanian flag and was

owned by Financial Shipping, a Maltese corporation based in Italy.

The contract was negotiated via phone and fax by Vestoil in Greece and

Financial Shipping in Italy. It required payment within thirty days of delivery and

included a provision purporting to grant Vestoil a lien on the M Pioneer and its

bunkers in the event of nonpayment; however, the contract did not include a choice

of law provision. Although Vestoil's subcontractor in Singapore delivered the fuel

---

[1]In the Notice of Appeal, Vestoil indicated its intent to appeal the dismissal of Financial Shipping Enterprise, Ltd. as the in personam defendant in Vestoil's Rule B maritime attachment action. However, because it did not address this issue in its briefs, Vestoil waived this issue. See Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1308 n.43 (11th Cir. 1998); U.S. v. Milam, 855 F.2d 739, 743 (11th Cir. 1988); Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1381 n.4 (11th Cir. 1988).

.

oil to the M Pioneer as required by the contract, Financial Shipping never paid for it. In February 2004, Financial Shipping sold the M Pioneer to Fairlane Shipping Corp., a Liberian corporation, for $9,550,000.00.

On May 21, 2004, while the M Pioneer was at Port Canaveral, Florida, Vestoil filed a Rule B complaint for attachment against Financial Shipping and the M Pioneer and a Rule C complaint to enforce a maritime lien against the M Pioneer in the Middle District of Florida. The district court issued a warrant for the arrest of the M Pioneer. Vestoil agreed to release the M Pioneer after it posted a bond in the amount of $202,851.88, guaranteed by a Letter of Undertaking. On June 22, 2004, the M Pioneer, appearing for the purpose of jurisdiction only, filed motions to quash its arrest and to dismiss Vestoil's Rule C in rem action.

On March 24, 2005, the district court dismissed without prejudice Financial Shipping as a party for lack of service. On March 31, 2005, the district court granted the M Pioneer's motion to quash its arrest and dismissed with prejudice Vestoil's Rule C action to foreclose the maritime lien. The district court, applying Lauritzen v. Larsen, 345 U.S. 571 (1953), and its progeny, held that Greek law applied. The district court then found that Greek law does not recognize a maritime lien for the provision of necessaries, notwithstanding the contract between the parties. Therefore, the district court held that it lacked in rem

3

jurisdiction over the M Pioneer pursuant to Rule C.

**II.**

Rule C(1)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims provides, in pertinent part, that "[a]n action in rem may be brought . . . to enforce any maritime lien. . . ." Rule C(3)(a)(ii) authorizes the district court to issue a warrant to arrest a vessel that is the subject of an <u>in rem</u> action. In <u>Trinidad Foundry and Fabricating v. M/V K.A.S. Camilla</u>, 966 F.2d 613 (11th Cir. 1992), we explained that Rule C provides the jurisdictional basis for an <u>in rem</u> action to enforce a maritime lien in federal district court:

> Rule C(1)(a) is procedural and sets forth the means to file an <u>in rem</u> action to enforce a maritime lien. The requirements of Rule C are to be read literally, and a vessel is not considered to be within the court's <u>in rem</u> jurisdiction when the rule has not been complied with, absent an agreement between the parties to the contrary. However, maritime liens are not created by Rule C. Instead, they are an aspect of substantive, rather than procedural maritime law.

<u>Id.</u> at 615 (citations omitted). Therefore, if a plaintiff in a Rule C action does not possess a valid maritime lien on a vessel, the district court lacks <u>in rem</u> jurisdiction over the vessel.

Vestoil argues that the district court erred in holding that the lien provision in the fuel oil contract did not create a maritime lien under the laws of Greece. We

4

review <u>de novo</u> the district court's interpretation of Greek law, <u>see</u> <u>Seguros del Estado, S.A. v. Scientific Games, Inc.</u>, 262 F.3d 1164, 1171 (11th Cir. 2001), as well as its dismissal for lack of personal jurisdiction. <u>Meier v. Sun Int'l Hotels, Ltd.</u>, 288 F.3d 1264, 1268 (11th Cir. 2002).

We assume, as the parties do, that Greek law applies.[2] Vestoil concedes that Greek law does not recognize a maritime lien for the provision of necessaries such as fuel oil and bunkers. Reply Br. at 13; <u>see</u> <u>Lion De Mer, S.A. v. M/V Loretta D</u>, 1998 WL 307077 at *2-3 (D. Md. 1998) <u>and</u> <u>Metron Commc'ns., Inc. v. M/V Tropicana</u>, 1992 WL 532637 at *3 (S.D. Fla. 1992) ("The Greek Code of Private Maritime Law recognizes certain special maritime liens which arise only in maritime cases . . . . These liens include only salvage claims, collision claims, claims arising from wages . . ., legal costs incurred for the common interest of all creditors, charges and taxes . . ., and costs of maintenance of the vessel in the last port.") Nonetheless, Vestoil, relying on <u>Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co.</u>, 254 U.S. 1 (1920), <u>Trinidad Foundry</u>, 966 F.2d 613, and <u>Sembawang Shipyard, Ltd. v. Charger, Inc.</u>, 955 F.2d 983 (5th Cir. 1992), argues that "international contracting parties are free to negotiate such contractual

---

[2]Although Vestoil states in one part of its brief that the parties "by their silence" intended that the laws of a jurisdiction that would enforce the lien would apply, Appellant Br. at 27, Vestoil concedes elsewhere that Greek law does apply. <u>Id.</u> at 20 ("While the plaintiff/appellant concedes that the law of Greece is the appropriate law to be applied to this lawsuit . . . .")

provisions as they please. . . ." Appellant Br. at 29. However, none of these cases convinces us that Greek law would recognize a maritime lien created by an agreement of the parties such as the one at issue here.

Moreover, it is settled law in the United States that a maritime lien can arise only by operation of law, regardless of any agreement between the parties. See The Bird of Paradise, 72 U.S. 545, 555 (1866); Newell v. Norton, 70 U.S. 257, 262 (1865) ("Maritime liens are not established by the agreement of the parties. . . . They are consequences attached by law to certain contracts, and are independent of any agreement between the parties that such liens shall exist. They, too, are stricti juris."); Marine Oil Trading Ltd. v. M/T PAROS, 287 F. Supp. 2d 638, 644 (E.D. Va. 2003) ("While a maritime lien does arise by operation of law rather than by agreement between the parties, there are a number of reasons for including contractual language alerting the parties to the existence of a lien on the ship. This language does not, however, actually give rise to the lien.") Authorities on Greek law indicate that Greek law is the same with regard to the creation of maritime liens: "The [maritime] lien . . . comes automatically into existence by virtue of law . . . ." Panayotis Sotiropoulos,[3] Liens for Necessaries and Arrest of Ships Under Greek Law, 12 TUL. MAR. L.J. 299, 307 (1988) (explaining also that "[t]here is no

---

[3]The author was a member of the Athens Bar and president of the Greek Maritime Law Association at the time he wrote this article.

maritime lien for necessaries in Greek law"). These authorities persuade us that the agreement between Vestoil and Financial Shipping did not create a maritime lien on the M Pioneer.

Our conclusion is not undermined by Article 479 of the Greek Civil Code, which provides that:

> If a property or a business has been transferred by contract, he who acquires is liable to the creditor up to the value of the transferred assets for debts belonging to the property or the business. The liability of him who transfers continues to exist. Any opposite agreement between those who entered into the contract, which harms the creditors is invalid towards them.

Appellant Br. at 31-32 (quoting Civil Code of Greece, Art. 479). This appears to be a successor liability statute; it does not create maritime liens by operation of law or authorize their creation by agreement of the parties.

Because Greek law does not recognize a maritime lien created by agreement of the parties, Vestoil does not have a valid maritime lien despite the contractual language at issue here. Therefore, the district court lacked in rem jurisdiction over the M Pioneer and properly dismissed Vestoil's Rule C complaint.

## III.

Vestoil also argues that the district court misapplied Greek law by not allowing Vestoil to assert in personam claims against the M Pioneer's new owner,

7

Fairlane. In essence, Vestoil claims that had it known that Greek law would apply to the contract, it would have amended its complaint to assert claims against Fairlane under Article 479 of the Greek Civil Code, excerpted above.

This argument fails. There is no indication that Vestoil ever tried to assert <u>in personam</u> claims against Fairlane, even though Vestoil knew that Fairlane was the new owner of the M Pioneer as early as July 2004, well before the district court's final order of March 31, 2005. Because this issue was never raised before the district court, it is not properly before this Court. <u>See</u> <u>Wright v. Hopper</u>, 169 F.3d 695, 708 (11th Cir. 1999) ("We will not consider claims not properly presented to the district court and which are raised for the first time on appeal.")

**AFFIRMED.**